UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIA BEACH CO., LLC,

    Plaintiff,

v.

EXQLINE, INC., et al.,

    Defendants.

No. C 20-01994 WHA

**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO TRANSFER**

## INTRODUCTION

In this design-patent infringement suit, the accused direct infringer moves to transfer and accused indirect infringer moves to dismiss. Because the complaint alleges no affirmative act by the defendant e-commerce platform provider which induced the alleged direct infringement, the claim of induced infringement is **DISMISSED**. But because transfer offers little benefit at the cost of undue delay, the motion to transfer is **DENIED**.

## STATEMENT

This case is about children's playpens. The California Beach Co. markets the patented POP N' GO PLAYPEN as the premier compact, durable, and portable means of containing our nation's little rascals. United States Design Patent No. D862,913 depicts the playpen as follows.



Patent Owner's complaint accuses Exqline, Inc., of selling knockoff playpens on Amazon, eBay, and its own websites www.exqline.com and www.thebestplaypen.com. These accused playpens allegedly infringe both the '913 patent and patent owner's registered trademarks.

The complaint also accuses Shopify Inc. of inducing Exqline's patent infringement. Shopify allegedly provides the e-commerce platform and resources which merchants, such as Exqline, use to create online storefronts and, in Exqline's case, sell infringing playpens.

Following Shopify's initial motion to dismiss for lack of personal jurisdiction and for failure to state a claim for induced infringement, patent owner filed an amended complaint rather than oppose the motion (Dkt. No. 37). Shopify has dropped its personal jurisdiction challenge, but again moves to dismiss, contending the amended complaint still fails to state a claim for induced infringement (Dkt. No. 42). Exqline has answered both complaints, but now moves to transfer this case to the Central District of California (Dkt. No. 48). This order follows full briefing and oral argument (held telephonically due to COVID-19).

**ANALYSIS**

1.   **MOTION TO DISMISS.**

A complaint must allege sufficient factual matter to state a facially plausible claim for relief. Allegations merely consistent with liability don't cut it; rather the allegations must

2

indicate or permit the reasonable inference, without speculation, of the defendants' liability for the conduct alleged. We take as true all factual allegations but legal conclusions merely styled as fact may be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Whoever *actively induces* infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "'Actively inducing,' like 'facilitating,'" encompasses a "broad" range of conduct, but nevertheless "requires an *affirmative* act" animated by specific intent. Not merely "knowingly," but "purposeful, intentional as distinguished from accidental or inadvertent." Plainly, induced infringement means the defendant knew of the patent, *acted to induce* another, knew the conduct it induced constituted direct infringement, and intended that result. *See Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1378–79 (Fed. Cir. 2001); *In re Bill of Lading Transmission*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).[*]

Inaction, absent control over the direct infringer or a duty to act, does not qualify as inducement. *See Tegal*, 248 F.3d at 1379–80. Yet *even action* that, in a but-for sense, enables infringement is not enough. As the Court of Appeals for the Federal Circuit has explained, borrowing from copyright, "there is no indirect infringement 'when a defendant merely sells a commercial product suitable for some lawful use.' Infringement only exists where there is evidence that '*goes beyond a product's characteristics* or the knowledge that it may be put to infringing uses.'" *Takeda Pharms. v. West-Ward Pharm.*, 785 F.3d 625, 630–631 (Fed. Cir. 2015) (quoting *MGM Studios v. Grokster, Ltd.,* 545 U.S. 913, 936 (2005)).

So, for example with a brochure or label, "[t]he question is not just whether [product] instructions describe the infringing mode, but whether the instructions *teach* an infringing use of the device such that [a court may] infer from those instructions an affirmative intent to infringe the patent." This, because "[m]erely describ[ing]," does not qualify as "recommend[ing]," "encourag[ing]," "promot[ing]," or "suggesting" infringement. *Ibid.* (quotations and citations omitted).

---

[*] Emphasis added throughout unless noted.

3

Here, the complaint alleges that "Shopify offers . . . its online merchants . . . a customizable e-commerce platform they [the merchants] can use to set up an online storefront and to engage in online transactions with their [the merchants'] customers." It offers merchants "features such as data warehousing and analytics, automated secure payments, data storage and security, and other features designed to 'help our *merchants* own their brand, develop a direct relationship with *their* buyers, and make *their* buyer[s'] experience memorable and distinctive." Shopify allegedly profits from its merchants' use of the platform, taking a percentage of payments processed through Shopify Payments and charging a flat fee per sale. And, Shopify provides these services to Exqline (Amend. Compl. at ¶¶ 44–65).

In short, the complaint alleges no more than that Shopify, the landlord of a virtual strip-mall, provided a virtual plot and support services to and collected rents from Exqline — as it would *any of its tenant merchants* — and, therefore (we are to conclude), Shopify actively induced Exqline's infringement. That cannot be. The allegation that Exqline's products directly infringe the patent alone does not transform a defendants' usual course of conduct into inducement. And, no aspect of Shopify's alleged *ordinary* provision of services to all comers lets us plausibly infer that Shopify recommended, encouraged, promoted, or suggested infringement. *See Takeda*, 785 F.3d at 630–31. Moreover, the allegations that Shopify had the power to suspend or terminate merchants' use of the platform, including for intellectual property violations, did not, as it might in the case of a parent company or alter-ego, vest Shopify with the authority or duty to police Exqline's commercial conduct. *See Tegal*, 248 F.3d at 1379.

Patent owner contends that Shopify controlled the websites where Exqline sold the allegedly infringing goods, but the complaint itself contradicts this claim. As the complaint acknowledges, *Exqline* "owned and operated" the accused websites just as the other merchants owned and "operat[ed] *their* online storefronts." The complaint describes www.exqline.com *twice* as "its [Exqline's] website" and www.thebestplaypen.com as both "their website" and "owned and operated by Exqline." True, early on the complaint ambiguously alleges that the websites "are both operated by Defendant Shopify." But the remainder of the more detailed

4

allegations clarify that Shopify merely provides the "e-commerce platform," data storage, analytics, and payment support. Indeed, the complaint admits that Exqline characterized its online storefront as "[o]ur store," and that Shopify's "e-commerce platform" simply "allows us to sell our products and services to you." In the complaint's own words, Shopify did no more than arm Exqline "with new and innovative ways to compete with larger, better-funded competitors." Shopify provided the virtual building resources for Exqline's online store. What Exqline decided to sell was Exqline's business (*id.* at ¶ 5, 25, 26, 45, 53, 54, 60).

Contrary to patent owner's characterization, the undersigned's prior decision in *Alibaba.com v. P.S. Products* does not counsel otherwise here. No. C 10-04457 WHA, 2012 WL 1668896 (N.D. Cal. May 11, 2012). To start, that decision focused on Alibaba's willful blindness to circumstances indicating the direct infringement and did not address Alibaba's affirmative conduct which might have induced that infringement. More fundamentally, though, patent owner ignores the facts. The accused websites in *Alibaba* were Alibaba's, where it sold third-party goods on commission or posted listings to connect buyers and sellers. Here, to reiterate, Exqline sold (allegedly) infringing goods from its *own* websites. Shopify provided only the virtual resources — as it did to all of its merchants.

In sum, induced infringement does not turn merely on a defendant's role in a product chain, but requires the defendant's *affirmative* action to recommend, encourage, promote, or suggest infringement. The amended complaint alleges no more than Shopify's ordinary course of business toward all its merchants and hangs the *conclusion* of inducement on the allegation that direct infringement had occurred. Direct infringement is already a precondition to induced infringement. It cannot also fill in the later gaps.

The complaint failing to allege any affirmative act of inducement, this order does not reach the allegations of Shopify's knowledge of the patent, of the direct infringement, and its specific intent for that result to occur.

2. **MOTION TO TRANSFER.**

A case may be transferred "[f]or the convenience of parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a). Courts "adjudicate motions for transfer according to

an individualized, case-by-case consideration of convenience and fairness." In this circuit, we weigh several factors, including:

> (1) [T]he location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franch., Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000) (quotation marks omitted). Exqline seeks transfer to the Central District of California because patent owner resides there (presumably along with its documents) and no party has ties to this district. This fails to convince here.

Suit in the Central District offers no more convenience to our foreign defendants (Exqline and company are from China, Shopify from Canada), no greater familiarity with the applicable law, and (as Exqline admits in its opening brief) no greater power over third-party witnesses who will either be foreign or California residents. Exqline's argument distills to the position that litigation in the Central District will be cheaper for patent owner. But that is, first, *patent owner's* argument to make and, more importantly, one which patent owner has waived by filing here.

Exqline fairly notes that a plaintiff's choice of forum away from home carries less weight. *Carolina Cas. Co. v. Data Broadcasting Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001) (Judge Vaughn R. Walker). But affording less deference to patent owner's choice does not require us to overrule it. The Central District offers no benefit that patent owner has not waived or which would not be negated by the delay inherent in transfer.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is **GRANTED**. Patent owner's claim for induced infringement against Shopify is **DISMISSED**. Patent owner has already enjoyed its one free amendment under the rules, and does not deserve yet another chance. Nevertheless, should patent owner wish, it may move for leave to amend its complaint against Shopify by

6

**NOVEMBER 20 AT NOON** on the condition that it will pay all reasonable fees and expenses incurred by Shopify in responded to yet another amended complaint. Any such motion must include as an exhibit a redlined version of the proposed amendment that clearly identifies all changes from the amended complaint. This order highlighted certain deficiencies in the amended complaint, but it will not necessarily be enough to add sentences parroting each missing item identified herein. If patent owner moves for leave to file yet another amended complaint, it should be sure to plead its best case and take into account all criticisms made by defendants, including those not reached by this order.

The motion to transfer is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 7, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE